UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JOHN DOE,

                        Plaintiff,

          -against-

RENSSELAER POLYTECHNIC
INSTITUTE,

                        Defendant.
--------------------------------------------------------X

Civil Action No.  1:20-CV-1185 (DNH/DJS)

**COMPLAINT**

**E. STEWART JONES HACKER MURPHY LLP**

JULIE A. NOCIOLO, ESQ.
Bar No. 519914
JAMES C. KNOX, ESQ.
Bar No. 517109
*Attorneys for Plaintiff John Doe*
28 Second Street
Troy, NY 12180-3986
Tel. (518) 274-5820

Plaintiff JOHN DOE, by and through his attorneys, E. STEWART JONES HACKER MURPHY LLP, complaining of defendant, RENSSELAER POLYTECHNIC INSTITUTE, alleges as follows:

### THE NATURE OF THIS ACTION AND FACTS OF THE CASE

1.      Plaintiff seeks redress against Defendant Rensselaer Polytechnic Institute ("RPI") due to its actions, omissions, errors, and the flawed procedures and violations of Title IX of the Education Amendments of 1972 by failing to provide plaintiff with the standard of due process to which he was entitled arising from the allegations of sexual assault made against plaintiff, a male student at RPI.

### THE PARTIES

**I.      The Plaintiff**

2.      Plaintiff John Doe is a natural person residing in the State of New York.  During the events described herein he was a student at RPI and resided off-campus, near the college, in Troy, New York.

3.      Plaintiff was accepted to many universities across the country, including defendant RPI.

4.      Plaintiff ultimately chose to attend RPI and began there in the fall semester of 2016.  He is majoring in mechanical engineering.  This major brings with it potential for plaintiff's future job prospects. RPI boasts one of the top employment rates for its graduating students in the country.

5.      The courses plaintiff is taking in his major program are so specialized that few other schools accept plaintiff's coursework, making it nearly impossible for him, at this point in his undergraduate career, to complete his education at any school other than RPI.

**II.      The Defendant**

6.      Rensselaer Polytechnic Institute (hereinafter "RPI" or defendant) is a private university located in Troy, New York.

7.      Defendant advertises itself as the oldest and first technological research university in the United States.

8.      Defendant emphasizes its engineering, science, and technology programs.  It is ranked sixth in top United States engineering colleges by *USA Today*.  It has received recognition as the home to one of the most powerful university-based supercomputers in the world.  It also ranks in the top ten on a CNBC list of United States colleges where students go on to earn the most money.  The RPI Troy campus houses 746 labs, studios, and technology spaces used for research.

## JURISDICTION AND VENUE

9.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 for claims arising under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

10.      This Court has personal jurisdiction over defendant RPI on the ground that RPI is conducting business within the State of New York.

11.      Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1931 because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of New York.

**JURY DEMAND**

12.     Plaintiff hereby demands a trial by jury of all triable issues in this matter.

**FACTUAL ALLEGATIONS**

13.     A female student who attended RPI, pseudonymously known herein as Jane Roe, made allegations of sexual assault against plaintiff to defendant on or about January 25, 2020.

14.     The allegations stem from an encounter between plaintiff and Ms. Roe on January 23, 2020 in Ms. Roe's dorm room on defendant's campus.

15.     On or about January 27, 2020, an anonymous user reported the incident to defendant's Title IX office through the email address TitleIX-Reporting@rpi.edu.

16.     The anonymous user wrote that Jane Roe disclosed a sexual assault to her residence assistant on Sunday, January 26, 2020 that occurred on the previous "Wednesday night through Thursday."

17.     The anonymous user stated that the resident assistant then reported the incident to defendant's Assistant Dean of Residence Life Mike Sun via telephone.

18.     There were no witnesses to the sexual encounter other than plaintiff and Jane Roe.

19.     Jane Roe's complaint is false; she consented to the sexual activity.

I.     **Plaintiff's Time at RPI, His Relationship to the Complainant, and the Evening in Question**

20.     Beginning in November 2019, plaintiff and Jane Roe met on the dating application Tinder.[1]

21.     Fairly quickly, plaintiff and Jane Roe moved their conversations to the social media application Snapchat.[2]

---

[1] Tinder is a dating application accessible on internet-based cellular telephones, which allows users within a certain geographic location to "match" based on preferences such as age range, sexual orientation, and interests.

22.     Plaintiff and Jane Roe continued their conversations intermittently throughout the Fall 2019 semester and into the 2019-2020 holiday break.

23.     Plaintiff and Jane Roe met in person for the first time on or about January 10, 2020.   They met at Jane Roe's dorm room, which is owned and operated by defendant.   The students then had consensual sexual intercourse.

24.     Several days later, plaintiff and Jane Roe met up at plaintiff's off campus apartment.   They had consensual sex in which Ms. Roe asked for plaintiff's consent. They used a condom for protection.   Ms. Roe slept over in plaintiff's bed following the sexual encounter.

25.     On or about January 23, 2020, Ms. Roe invited plaintiff to her dorm room.

26.     Plaintiff had already been drinking a beer and was too intoxicated to drive; he walked over to Ms. Roe's residence hall.

27.     Ms. Roe let plaintiff into her residence hall and led him to her dorm room.

28.     Plaintiff does not typically drink hard alcohol, but when he arrived in Ms. Roe's dorm room, she gave him a drink of Tito's vodka.

29.     Ms. Roe told plaintiff that he "could have as much as I want."

30.     Ms. Roe never drank alcohol while plaintiff was in her room.

31.     Ms. Roe was completely sober.

32.     Plaintiff and Ms. Roe began talking, and she continued giving him alcohol.

33.     Plaintiff became incredibly drunk.

34.     Plaintiff and Ms. Roe began making out, and Ms. Roe asked plaintiff if he wanted to have sex.   At that point, plaintiff said yes.

---

[2] Snapchat is an application accessible on internet-based cellular telephones, which allows users to, among other things, transmit photographs and messages for a designated time period.   After the time period expires, the photographs or messages are no longer visible to either the sender or the recipient.

35.     Plaintiff and Ms. Roe each took off their clothes and had vaginal sex, using a condom plaintiff had in his backpack.

36.     After plaintiff and Ms. Roe finished having sex, Ms. Roe went to the bathroom and encouraged plaintiff to drink more, handing him the bottle of Tito's vodka.

37.     When Ms. Roe returned from the bathroom, plaintiff and she talked a little more and began to kiss and make out again.

38.     Ms. Roe asked plaintiff to have sex with her again, but plaintiff told her "no," and explained that he did not have any more condoms and that he would not have sex without a condom.

39.     Plaintiff never had sex without a condom.

40.     Ms. Roe began to pressure plaintiff, saying "Do it anyways."

41.     Plaintiff was very intoxicated and ultimately gave in to the pressure to have unprotected sex with Ms. Roe.

42.     Plaintiff only remembers glimpses, but clearly remembers Ms. Roe ordering him to place his hands around her neck.

43.     This act made plaintiff feel very uncomfortable—it was not something plaintiff enjoyed or wanted to do—and after about five seconds, plaintiff took his hand away and stopped the intercourse, because plaintiff felt uncomfortable with what Ms. Roe was making him do.

44.     Ms. Roe then asked plaintiff if he had ever had anal intercourse.   Plaintiff responded, "no."

45.     Ms. Roe asked plaintiff if he wanted to have anal intercourse with her.

46.     Plaintiff said he wasn't sure if he was ready to, and that he did not want to without a condom.

47.     Ms. Roe pressured plaintiff to have unprotected sex with her, but this time anally.

48.     Plaintiff began to have anal sex with Ms. Roe, but stopped after about ten seconds because he was uncomfortable.

49.     Plaintiff felt violated and scared.

50.     Ms. Roe then directed plaintiff to "finish normally."

51.     Afterwards, plaintiff told Ms. Roe that he was feeling really drunk and needed water, which she had to get for him because plaintiff couldn't do so himself.

52.     Plaintiff was so intoxicated he could not even get up.

53.     Ms. Roe brought plaintiff water, and plaintiff then passed out.

54.     The next morning, Ms. Roe woke plaintiff up and told plaintiff that she had to go to class.

55.     Plaintiff also had to attend class that morning.

56.     Plaintiff was overwhelmed that Ms. Roe allowed her to pressure him into having unprotected and dangerous sex.

57.     The only reason Ms. Roe was able to get plaintiff to agree to have sex with him without protection was because she had gotten him so intoxicated and pressured him.

58.     Plaintiff suffered serious psychological damage which forced him to take a medical leave of absence.

59.     At no point during their sexual encounter or after it did Ms. Roe indicate to plaintiff that any of the sexual activities in which she engaged with plaintiff were non-consensual.

60.     At no point during their sexual encounter or after it did Ms. Roe lose consciousness or otherwise became incapacitated due to intoxication; she never drank in front of plaintiff and she was sober the entire time.

61.     Plaintiff had not seen, heard from, or spoken to Ms. Roe since then.

## II.   Aftermath - Title IX Charges

62.     On or about January 31, 2020, defendant notified plaintiff by emailed letter that he was the subject of a Title IX investigation commenced by defendant for allegedly violating defendant's Student Sexual Misconduct Policy and Procedures (annexed hereto as Exhibit "A").

63.     Plaintiff learned from the notice that Jane Roe had accused him of sexual assault from an incident which occurred on or about January 23, 2020.

64.     On or about February 11, 2020, plaintiff retained the E. Stewart Jones Hacker Murphy law firm to defend him against defendant university's allegations.

65.     On or about February 11, 2020, Julie A. Nociolo, Esq. of the E. Stewart Jones Hacker Murphy law firm notified defendant's Title IX Coordinator, Larry Hardy, that she had been retained by plaintiff to serve as his advisor.  Ms. Nociolo requested that Mr. Hardy provide all of the materials that he has already provided to the plaintiff.  Among those documents was defendant's Student Sexual Misconduct Policy and Procedures (last edited August 24, 2018), hereinafter "RPI's 2018 Title IX Policy." (annexed hereto as Exhibit "B").

66.     On or about June 9, 2020, plaintiff filed a complaint to defendant's Title IX officers Larry Hardy and Elizabeth Mary Brown-Goyette alleging that he was sexually assaulted by Jane Roe on or about January 23, 2020 because he was unable to consent to any sexual activity due to his intoxication.

67.     On or about August 4, 2020, defendant concluded its investigation and determined by a preponderance of the evidence standard that it was more likely than not that plaintiff committed a violation of RPI's 2018 Title IX Policy. (annexed hereto as Exhibit "I")

68.     On or about August 4, 2020, defendant concluded its investigation into plaintiff's complaint against Ms. Roe and dismissed the complaint because there was insufficient evidence to prove by a preponderance of the evidence.  (annexed hereto as Exhibit "J")

69.     Plaintiff timely appealed defendant's determination dismissing his complaint against Jane Roe and requested a hearing on this matter. (annexed hereto as Exhibit "K").

70.     On or about August 25, 2020, defendant responded to plaintiff's appeal and denied and dismissed his request for a hearing. (annexed hereto as Exhibit "L").

71.     By denying plaintiff's appeal and request for a hearing, he exhausted all administrative levels of appeal at defendant RPI.

72.     On or about August 11, 2020, plaintiff timely contested defendant's determination and invoked his right to a hearing pursuant to RPI's 2018 Title IX Policy.

73.     On August 14, 2020, the United States Department of Education's final regulations governing Title IX proceedings at covered education institutions became effective, hereinafter "Title IX Rules."  (annexed hereto as Exhibit "C")

74.     Defendant since revised its Title IX policy.  The new policy is entitled "Student Sexual Misconduct Policy and Procedures, Revised August 14, 2020, Supersedes: Sexual Misconduct Policy and procedures dated August 2018," hereinafter "RPI 2020 Title IX Policy." (annexed hereto as Exhibit "D").

75.     Defendant's website no longer has RPI's 2018 Title IX Policy publicly available.

76.     On or about August 26, 2020, plaintiff and his advisor Ms. Nociolo attended a scheduled telephone conference with Mr. Hardy to discuss defendant's Title IX hearing process, which is standard practice under RPI's 2018 Title IX Policy.

77.     At the conference, plaintiff and his advisor inquired how defendant planned to incorporate the DOE regulations at his Title IX hearing.

78.     Mr. Hardy explained that defendant would not follow the Title IX Rules, which became effective on August 14, 2020, in plaintiff's case.

79.     Mr. Hardy explained that the Title IX Rules did not apply to plaintiff's hearing or case because the regulations were not retroactive.

80.     Mr. Hardy stated that the RPI's Student Sexual Misconduct Policy that would govern plaintiff's matter would be that which was in effect at the time of allegations were alleged to have occurred, or, in plaintiff's case, RPI's 2018 Title IX policy.

81.     Plaintiff and his advisor inquired who from defendant's institution made this determination.

82.     Later that same day, Mr. Hardy sent a follow up email to Ms. Nociolo and her co-counsel James Knox, Esq. with the subject line "THE TITLE IX RULE IS EFFECTIVE ON AUGUST 14, 2020, AND IS NOT RETROACTIVE." (annexed hereto as Exhibit "E").   The body of the email contained what appeared to be a blog post dated August 5, 2020 authored by the DOE's Office of Civil Rights (hereinafter "OCR"). See id.

83.     Retroactivity is not mentioned in the substantive Title IX Rules.

84.     The retroactivity of the Title IX Rules is an open question reserved for the determination by the federal courts.

85.     On or about September 21, 2020, defendant scheduled plaintiff's Title IX hearing for **Wednesday, September 30, 2020 at 4 o'clock** in the afternoon via WebEx.

86.     Plaintiff retained the E. Stewart Jones Hacker Murphy law firm to challenge's defendant's violation of Title IX in federal court by failing to apply the Title IX Rules to plaintiff's hearing and matter.

## IV.   History of Enforcement of Title IX to Investigate Student Sexual Assault in Educational Institutions Receiving Federal Funds

87.     Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), prohibits discrimination "on the basis of sex" by colleges and universities, among others, who receive federal financial assistance.

88.     On April 4, 2011, the United States Department of Education (hereinafter "DOE") issued guidance through a letter, which came to be referred to as the "Dear Colleague Letter," (annexed hereto as Exhibit "F").  The letter stated that:

>       Sexual harassment of students, which includes acts of sexual violence, is a form of sex discrimination prohibited by Title IX.

Id. at 1.

89.     In the Dear Colleague Letter, the OCR instructed covered education institutions how to comply with the DOE's new guidance on Title IX.  Now, a covered school was required to follow this mandate from the DOE:

>       If a school knows or reasonably should know about student-on-student harassment that creates a hostile environment, Title IX requires the school to take immediate action to eliminate the harassment, prevent its recurrence, and address its effects.

Exhibit "F" at 4.

90.     The Office of Civil Rights, the enforcement office within DOE, expressly designated the quantum of legal authority that courts and covered entities should afford the Dear

Colleague Letter. Specifically, the OCR stated that the DOE "determined that this Dear Colleague Letter is a 'significant guidance document' under the Office of Management and Budget's Final Bulletin for Agency Good Guidance Practices, 72 Fed. Reg. 3432 (Jan. 25, 2005)."[3] Exhibit "F" at 1 n.1.

91.     OCR went on to say that:

> OCR issues this and other policy guidance to provide recipients with information to assist them in meeting their obligations, and to provide members of the public with information about their rights, under the civil rights laws and implementing regulations that we enforce.   OCR's legal authority is based on those laws and regulations.   This letter does not add requirements to applicable law, but provides information and examples to inform recipients about how OCR evaluates whether covered entities are complying with their legal obligations.

Id. at 1 n.1.

92.     On April 29, 2014, the OCR issued additional guidance to covered education institutions clarifying its position on Title IX enforcement in document entitled "Questions and Answers on Title IX and Sexual Violation."[4]

---

[3] Significant guidance documents are those that the Office of Management and Budget ("OMB") have defined as those that:

- Lead to an annual effect on the economy of $100 million or more or adversely affect in a material way the economy, a sector of the economy, productivity, competition, jobs, the environment, public health or safety, or State, local, or tribal governments or communities;

- Create a serious inconsistency or otherwise interfere with an action taken or planned by another agency;

- Materially alter the budgetary impact of entitlements, grants, user fees, or loan programs or the rights and obligations of recipients thereof; or

- Raise novel legal or policy issues arising out of legal mandates, the President's priorities, or the principles set forth in Executive Order 12866, as further amended.

See 72 Fed. Reg. 3432 § I(4)(i)-(iv).

[4] See "Questions and Answers on Title IX and Sexual Violence," United States Department of Education, *available at*: https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf (April 14, 2014)(last visited September 25, 2020).

93.     On September 22, 2017, during President Donald Trump's administration, the DOE's Acting Assistant Secretary for Civil Rights Candice Jackson rescinded both of the above referenced Obama-era guidance documents, (annexed hereto as Exhibit "G").

94.     On November 16, 2018, DOE drafted proposed rules and regulations on Title IX and the covered education institutions' enforcement of student sexual assault and presented them for public comment.[5]

95.     Over the next approximately 29 months, DOE received and reviewed over 124,000 public comments from survivors, advocates, falsely accused students, school administrators, Title IX coordinators, and the general public, and ultimately issued the final regulations on May 6, 2020.[6] (hereinafter "Title IX Rules").

96.     After an initial unsuccessful legal challenge by interest groups, colleges and universities, among others, the Title IX Rules became effective on August 14, 2020. See Victim Rights Law Center et al v. Devos et al, 1:20-cv-11104 (WGY), (D. Mass) (action commenced on June 10, 2020).[7]

97.     Until the Title IX Rules became effective on August 14, 2020, the DOE has never previously promulgated a final rule or regulation on the process or procedure covered education institutions, including the vast majority of colleges and universities, must use to handle

---

[5] See "Secretary DeVos: Proposed Title IX Rule Provides clarity for Schools, Support for Survivors, and Due Process rights for All," United States Department of Education, *available at*: https://www.ed.gov/news/press-releases/secretary-devos-proposed-title-ix-rule-provides-clarity-schools-support-and-due-process-rights-all  (November 16, 2018) (last visited September 25, 2020).

[6] See "Secretary DeVos Takes Historic Action to Strengthen Title IX Protections for All Students," United States Department of Education, *available at*: https://www.ed.gov/news/press-releases/secretary-devos-takes-historic-action-strengthen-title-ix-protections-all-students (May 6, 2020) (last visited September 25, 2020).

[7] Over sixty-five (65) amici noticed their appearance in this action and, as of September 25, 2020, the matter is scheduled for a bench trial on October 14, 2020. See Victim Rights Law Center et al v. Devos et al, 1:20-cv-11104 (WGY) (D. Mass) (action commenced on June 10, 2020).

complaints of student sexual assault in order to comply with Title IX of the Education Amendments of 1972.

98.      On August 5, 2020, nine days before the Title IX Rules became effective, the OCR authored a blog post entitled "THE TITLE IX RULE IS EFFECTIVE ON AUGUST 14, 2020, AND IS NOT RETROACTIVE," and posted it to the DOE's website, (annexed hereto as Exhibit "H").

99.      In its blog post, OCR wrote that it received questions about the retroactivity of the Title IX Rules.  It further stated that:

> OCR will enforce the new Title IX Rule only when it becomes effective [on August 14, 2020], and will enforce the new Rule prospectively.

See id.

100.    OCR explained its reasoning for its enforcement position.  See id.  OCR stated that it relied on language in the Preamble of the Title IX Rules which explicitly state that the DOE "will not enforce these final regulations retroactively." Id., citing Title IX Rule Preamble, *available at* 85 Fed. Reg. 97 at 30061.  In addition, OCR referenced a footnote to the above statement which, in sum and substance, cites legal authority for the general proposition of statutory construction against retroactivity.  See id. at 30061 n.290.

**V.      Plaintiff's Denial of the Process He is Entitled to Under the United States Department of Education August 14, 2020 Title IX Rules**

101.    Contrary to the position taken by other New York State private universities, including Syracuse University and Siena College, defendant unlawfully denies students accused of Title IX violations, like plaintiff, of the process they are entitled to under the Title IX Rules.

102.    Defendant articulated to plaintiff and plaintiff's advisor that it was its policy to apply the RPI Student Sexual Misconduct Policy & Procedures that was in effect at the time the

alleged sexual assault occurred.  In plaintiff's case, defendant has chosen to apply RPI's 2018 Title Policy to plaintiff's matter because the alleged sexual assault occurred on or about January 23, 2020.

103.   Defendant's decision to withhold the process memorialized in RPI's 2020 Title IX Policy from plaintiff violates Title IX of the Education Amendments of 1972 and the corresponding Title IX Rules promulgated by DOE and enforced by OCR.

104.   Defendant's Title IX hearing has not yet occurred and is presently scheduled for **Wednesday, September 30, 2020 at four o'clock in the afternoon**.

105.   Although the Title IX Rules became effective prior to plaintiff's hearing, (see Exhibit "C"), and defendant adopted a new policy before plaintiff's hearing, (see Exhibit "D"), defendant plans to violate Title IX of the Education Amendments of 1972 by discriminating against plaintiff because of his sex by withholding the process plaintiff (a male) is lawfully due at his hearing presently scheduled for September 30, 2020.

106.   According to defendant's own policy, expulsion is a potential sanction if defendant's hearing board determines plaintiff committed sexual assault in violation of defendant RPI's 2018 Title IX Policy by a preponderance of the evidence.

107.   Furthermore, plaintiff has been already been damaged by defendant's Title IX violations.

108.   Defendant conducted its investigation into the alleged events of January 23, 2020 in a manner that discriminated against plaintiff because of his sex in violation of Title IX.

109.   Defendant sustained a complaint of sexual assault lodged by Jane Roe (a female) against plaintiff (a male) as presenting sufficient evidence that plaintiff committed sexual assault of Jane Roe by a preponderance of the evidence. (See Defendant's Determination in Case No.

2020-49, attached hereto as Exhibit "I").  Whereas defendant dismissed a complaint of sexual assault lodged by plaintiff (a male) against Jane Roe (a female) as failing to present sufficient evidence that Jane Rose committed sexual assault of plaintiff by a preponderance of the evidence. (See Defendant's Determination in Case No. 2020-65, attached hereto as Exhibit "J").

110.    Defendant arrived at an erroneous finding of non-consensual sex perpetrated by plaintiff at odds with the evidence, and the untested credibility of the complainant Jane Roe.

111.    Plaintiff stands to suffer imminent further damage due if subjected to a process without the process he is entitled to under Title IX of the Education Amendments of 1972 and the corresponding Title IX Rules that became effective on August 14, 2020. If found in violation of the sexual assault provision of RPI's 2018 Policy plaintiff could face permanent expulsion from the RPI. His academic and employment future will be cast into doubt by the notation defendant will attach to his transcript indicating that he has been found in violation of a sexual offense, and he will lose the opportunity to earn his degree.  All of this harm does not even enumerate the impact on plaintiff's psychological and emotional health.  Thus, plaintiff John Doe brings this action to obtain relief based on the cause of action for defendant's violations of Title IX of the Education Amendments of 1972.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Defendant Rensselaer Polytechnic Institute's**
**Violation of Title IX of the Education Amendment of 1972**

112.    Plaintiff repeats and realleges each and every allegation above as if set forth fully herein.

113.    Title IX of the Education Amendment of 1972 ("Title IX") provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from

participation in, he denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal Financial Assistance."

114.   Title IX applies to an entire school or institution if any part of that school receives federal funds; for example, athletic programs are subject to Title IX, even though collegiate sports receive little to no federal funding.

115.   Upon information and belief, RPI receives federal financial assistance.

116.   Both the federal Departments of Education and Justice have promulgated regulations under Title IX that require schools to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student … complaints alleging any actions which would be prohibited" by Title IX or regulations thereunder.[8]   Such prohibited actions include all forms of sexual harassment, including sexual intercourse, sexual assault and rape.

117.   Under the Title IX Rules, which became effective on August 14, 2020, covered education institutions, including defendant RPI, must adopt procedures that afford due process throughout the investigation, hearing, and appeal phases of a Title IX proceeding to adjudicate whether a student respondent violated a provision of the covered education institutions' Title IX policy including:

    i.    Notice of the allegations of sexual harassment potentially constituting sexual harassment as defined by the Title IX Rules[9], including sufficient details known at the time and with sufficient time to prepare a response before any initial interview;

    ii.    The burden of proof and the burden of gathering evidence sufficient to reach a determination rests on the college or university and not on the parties;

    iii.    The right to an objective evaluation of all relevant evidence—including both inculpatory and exculpatory evidence—and provide that credibility

---

[8] 34 C.F.R. § 106.8 (b) (U.S. Dep't of Education); 28 C.F.R. § 54.135 (b) (U.S. Dep't of Justice).
[9] Sexual harassment is defined by the DOE, as relevant here, as:
"'Sexual assault' as defined in 20 U.S.C. 1092(f)(6)(A)(v) ["an offense classified as a forcible or nonforcible sex offense under the uniform crime reporting system of the Federal Bureau of Investigation"]." See 34 C.F.R. § 106.30.

determinations may not be based on a person's status as a complainant, respondent, or witness;

iv.     The right to a presumption that the respondent is not responsible for the alleged conduct until a determination regarding responsibility is made at the conclusion of the grievance process;

v.      Notice of whether the college or university has chosen to apply a preponderance of the evidence standard or clear and convincing evidence standard to determine the responsibility of the respondent;

vi.     The right to an opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in a formal complaint;

vii.    The right for each party's advisor to ask the other party and any witnesses all relevant questions and follow-up questions, including those challenging credibility;

viii.   The right to appeal an adverse determination on the bases of:

1. Procedural irregularity that affected the outcome of the matter;

2. New evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter; and

3. The Title IX Coordinator, investigator(s), or decision-maker(s) had a conflict of interest or bias for or against a party that affected the outcome of the matter. [10]

118.    Most significantly, the Title IX Rules confirm that to meet the basic due process protections for students, colleges and universities must offer the opportunity for parties to cross-examine witnesses at a live hearing through a party's chosen advisor.

119.    Defendant has confirmed that it will deny the right to cross examine his accusers (the right to confrontation) to plaintiff through his advisor at his hearing presently scheduled for **Wednesday, September 30, 2020 at four o'clock in the afternoon**.

---

[10] See 34 C.F.R. § 106.45 ("Grievance process for formal complaints of sexual harassment").

120.    Based on the foregoing, defendant has deprived plaintiff, on the basis of his sex, the process he is due under Title IX of the Education Amendments of 1972 and corresponding Title IX RUles through the improper administration and/or the existence in its current state, of defendant RPI's 2018 Title IX Policy (attached hereto as Exhibit "B").

121.    Moreover, defendant conducted its investigation into the alleged events of January 23, 2020 in a manner that discriminated against plaintiff because of his sex in violation of Title IX.

122.    Defendant RPI sustained a complaint of sexual assault lodged by Jane Roe (a female) against plaintiff (a male) as presenting sufficient evidence that plaintiff committed sexual assault of Jane Roe by a preponderance of the evidence. (See Defendant's Determination in Case No. 2020-49 attached hereto as Exhibit "I").   Whereas defendant RPI dismissed a complaint of sexual assault lodged by plaintiff (a male) against Jane Roe (a female) as failing to present sufficient evidence that Jane Rose committed sexual assault of plaintiff by a preponderance of the evidence.  (See Defendant's Determination in Case No. 2020-65 attached hereto as Exhibit "J").

123.    Defendant arrived at an erroneous finding of non-consensual sex perpetrated by plaintiff at odds with the evidence, and the untested credibility of the complainant Jane Roe.

124.    In so doing, defendants have denied to plaintiff the Title IX rights due to him as an accused respondent.  In plaintiff's standing as a student accused of sexual assault, defendant RPI has denied and continues to deny plaintiff the due process to which he is entitled by unaccountably crediting Ms. Roe's version of events over his own without the benefit of any cross-examination.

125.    Defendant has created an environment in which an accused male is fundamentally denied the due process guaranteed under Title IX by prosecuting male students under a presumption of guilt.  Such a one-sided process has arbitrarily and selectively denied plaintiff, because of his sex, of educational and extracurricular opportunities and benefits at RPI.

126.    Based on the foregoing, defendant RPI discriminated against plaintiff because of his sex in violation of Title IX of the Education Amendments of 1972.

127.    As a result of the foregoing, plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorney's fees, expenses, costs, and disbursements, as well as the removal of any sanctions arising from the student conduct proceeding underlying the present case.

## PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons plaintiff demands judgment against defendants as follows:

A.    Award plaintiff all of his damages in an amount to be determined at trial under Title IX of the Education Amendments of 1972, including, but not limited to, damages to physical well-being, emotional, mental, and psychological health, damages to reputation, past and future economic losses, loss of educational opportunities, loss of future career prospects;

B.    Award plaintiff all attorneys' fees, costs, and expenses available under the law;

C.    Award plaintiff all prejudgment and postjudgment interest available under the law;

E.    Order defendants to remove any sanctions arising from the student conduct proceeding underlying the present case including: a determination of a violation of defendant's Title IX policy; a notation on the plaintiff's transcript of a violation of defendant's Title IX

policy; the issuance of a sanction of probation, suspension, dismissal, or any other consequence

to plaintiff due to an unlawful finding of a violation of defendant's Title IX policy;

      F.     Award plaintiff such additional and further relief as this Court may deem just and

proper.

Dated:       September 28, 2020

                    **E. STEWART JONES HACKER MURPHY, LLP**

                    By:          

                            Julie A. Nociolo, Esq.