UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JOHN DOE,

                                Plaintiff                          Civil Action No. 1:20-CV-1185 (DNH/DJS)

                -against-


RENSSELAER POLYTECHNIC
INSTITUTE,

                                Defendant.
-------------------------------------------------------X


### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE TO ENJOIN DEFENDANT RENSSELAER POLYTECHNIC INSTITUTE FROM CONDUCTING AN UNLAWFUL TITLE IX HEARING AGAINST PLAINTIFF JOHN DOE

## I.     INTRODUCTION

Plaintiff is presently being denied the process protections he is due mandated by Title IX of the Education Amendment of 1972, 20 U.S.C. § 1681(a), and the Department of Education's corresponding regulations. Plaintiff faces immediate risk of expulsion from defendant university Rensselaer Polytechnic Institute ("RPI").  Defendant has scheduled an unlawful Title IX hearing on **September 30, 2020 at four o'clock in the afternoon** to adjudicate whether plaintiff has violated the sexual assault provision of defendant' Student Sexual Misconduct Policy & Procedures, last revised August 24, 2018[1] based on an allegation by a female student, Jane Roe, that plaintiff sexually assaulted her on or about January 23, 2020.

The sole issue to be determined at such a hearing is credibility.  Plaintiff has never wavered that he has been falsely accused.  The Hearing Board must decide whether they believe the plaintiff, John Doe, or they believe the complainant, Jane Roe.  However, presently, the Hearing Board must answer that question without the benefit of cross-examination, which is mandated by the rules promulgated by the United States Department of Education (hereinafter "Title IX Rule").[2]

As the DOE makes clear, one of the express purposes behind the new Title IX Rules is to ensure that respondents like plaintiff are accorded significant due process rights in light of the gravity of the potential consequences to reputation, educational attainment, future professional and vocational opportunities, and future earnings, all of which may be significantly harmed by a negative determination at a school's sexual misconduct hearing.  Most importantly, the new Title

---

[1] See Compl. Exhibit "B."

[2] The United States Department of Education (hereinafter "DOE")'s Title IX Rules became effective on August 14, 2020. See 34 C.F.R. § 106 et seq.; see also Compl. Exhibit "C."

IX Rule not only permits, but requires, that institutions like RPI afford accused students in such proceedings to be represented by an attorney who may cross-examine witnesses in real time. Cross-examination is an essential tool to challenge the credibility of witnesses, especially accusers, and is essential in proceedings of this nature and gravity.

Here, if defendant's hearing board credits Ms. Roe, plaintiff will be found to have violated the sexual assault provision of defendants' Policy. He will face significant and serious sanctions including expulsion from the institution and a notation on his transcript—impeding him from transferring to another institution, being accepted at a graduate school, or obtaining future employment.

Without the benefit of being able to subject Ms. Roe to cross-examination (and without similarly being subject to it himself) plaintiff will be denied the minimum due process necessary and afforded to him by the DOE's Title IX Rules. A plain reading of the regulation requires defendant to provide plaintiff with a right of cross-examination, among other enumerated rights, in the pending proceedings. Defendant, in reliance on a non-controlling blog post, insists on depriving plaintiff of that right.

## II.    FACTS AND PROCEDURAL HISTORY

Plaintiff respectfully directs the Court to the accompanying Affirmation of Julie A. Nociolo, Esq. and paragraphs 3 to 106 of plaintiff's Complaint and Exhibits A-L of the Complaint for a full recitation of the facts and procedural history.

## III.    LEGAL ARGUMENT

### THE COURT SHOULD ENJOIN DEFENDANT RENSSELAER POLYTECHNIC INSTITUTE FROM CONDUCTING AN UNLAWFUL TITLE IX HEARING AGAINST PLAINTIFF BY ORDERING A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

"The purpose of a preliminary injunction is to maintain the status quo pending a final determination on the merits." *Diversified Mortg. Investors v. U.S. Life Ins. Co. of New York*, 544 F.2d 571, 576 (2d Cir. 1976).  In proceedings challenging a university's determination on a student conduct matter, status quo "has been interpreted to refer to the last uncontested set of facts preceding the pending controversy." *Garshman v. Pennsylvania State University*, 395 F. Supp. 912, 920 (M.D. Penn. 1975).

"In order to obtain a preliminary injunction, the moving party must demonstrate (1) a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by denying the injunction; (3) whether there will be greater harm to the non-moving party if the injunction is granted; and (4) whether granting the injunction is in the public interest." *Doe v. Pennsylvania State University*, 276 F.Supp.3d 300, 307 (M.D. Pennsylvania 2017); *North American Soccer League, LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32, 36-37 (2d Cir. 2018); *see Benisek v. Lamone*, 138 S.Ct. 1942, 1944 (2018) ("As a matter of equitable discretion, a preliminary injunction does not flow as a matter of course from a plaintiff's showing of a likelihood of success on the merits.  Rather, a court must also consider whether the movant has shown that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.") (internal quotation marks and citations omitted).

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision in the merits can be rendered." *Doe v. Rensselaer Polytechnic Institute*, No. 1:18-CV-1374 (FJS/CFH), 2019 WL 181280, at *2 (N.D.N.Y. Jan. 11, 2019) (internal quotations and citations omitted).  The Second Circuit has held that preliminary relief should be

4

granted "where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). "A balance of equities tipping in favor of the party requesting [injunctive relief] means a balance of the hardships against the benefits." *Napierski v. Guilderland Democratic Cmte.*, No. 18-CV-846, 2018 WL 3546175, at *2 (N.D.N.Y. July 24, 2018); *see Walker v. Bellnier*, No. 17-CV-1008, 2017 WL 5135702, at *12 (N.D.N.Y. Nov. 3, 2017) (holding the same standard applies to a request for a temporary restraining order as a request for a preliminary injunction).

"In order to establish a likelihood of success on the merits, movants must show that their chance of prevailing is greater than fifty percent." *Connor v. New York State Com'n on Judicial Conduct*, 260 F.Supp.2d 517, 520 (N.D.N.Y. 2003), *citing Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988). "There may remain considerable room for doubt." *Id.* In other words, the moving party must "make a clear showing of probable success. The party does not need to show that it will ultimately prevail on the merits." *Donohue v. Paterson*, 715 F.Supp.2d 306, 314 (N.D.N.Y. 2010) (internal citations and quotations omitted). District courts are afforded considerable discretion in their determinations. *See Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005).

**A.   Plaintiff has a reasonable probability of success on his Title IX claims against defendant because Defendant Rensselaer Polytechnic Institute discriminated against him on the basis of his sex.**

Plaintiff has a reasonable probability of success on his Title IX claims.  Defendants have discriminated against plaintiff on the basis of his sex in at least two ways.  First, defendant unlawfully denied plaintiff the procedural process he is due under Title IX and the United States Department of Education's promulgated regulations (Title IX Rules, effective August 14, 2020). Second, defendant dismissed plaintiff's Title IX complaint alleging sexual assault against Ms. Roe as unsubstantiated while substantiating Ms. Roe's complaint against plaintiff.  Defendant's decisionmaking evinces that it discriminated against plaintiff because of his sex.

On August 14, 2020, Title IX Rules became effective mandating, among other things, that every witness at the Title IX hearing be subjected to cross-examination by the parties' advisors. (See Compl. Exh. "C."). Prior to plaintiff's scheduled hearing on September 30, 2020, defendant through its representative Larry Hardy informed plaintiff and his advisor that plaintiff would not be entitled to the procedural process promulgated by the DOE.  (See Nociolo Affirmation ¶ 23; Compl. ¶¶ 73-79).   Mr. Hardy asserted that the Title IX regulations were not retroactive.  (See Comp. ¶ 79).  He informed plaintiff and his advisor that defendant would use the university policy that was in effect at the time of the allegation. It is defendant's position that even though plaintiff has not yet had a hearing, he would not be entitled to the process (most notably cross examination of the complainant by his advisor) prescribed by the new Title IX Rules.

When scrutinized closely, it is apparent that defendant's position is absurd. Hypothetically, under defendant's argument, a respondent who is notified in September 2020 of a Title IX complaint against him that allegedly occurred in late August 2020 would receive process under RPI's 2020 Policy.  (See Compl. Exh. "D."). However, a similar respondent who is notified in September 2020 of a substantially similar Title IX complaint against him which

allegedly occurred back in March 2019 would be adjudicated under a different policy—RPI's 2018 Policy. (See Compl. Exh. "B."). Such a disparate application of defendant's policies and procedures runs counter to the Title IX Rules issued by the DOE following a several year notice and comment period and violates Title IX, a statue approved by Congress and signed into law by the President.

What is more is that defendant RPI's position is at odds with other New York State private universities including Syracuse University and Siena College. Since the Title IX Rules became effective on August 14, 2020, plaintiff's counsel has had conversations with members of the respective universities' Title IX offices and General Counsel's offices. Plaintiff's counsel was informed that both schools would apply their new 2020 policies (adapted to comply with the Title IX Rules) to all Title IX cases commenced after August 14, 2020.

Of course, it is not the province of covered education institutes to dictate whether the Title IX Rules have retroactive effect. Under the laws of the United States, the fox does not guard the henhouse. It is the Court's role to determine whether the Title IX Rules which became effective on August 14, 2020 apply to plaintiff's September 30, 2020 Title IX hearing. (See Administrative Procedure Act, 5 U.S.C. §§ 500-596; *Christensen v. Harris County*, 529 U.S. 576 [2000]; *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 [1984]). As the universities themselves have taken opposite positions, plaintiff has at minimum a reasonable probability of success on his claim.

Second, plaintiff has a reasonable probability of success for a second reason. Defendant denied plaintiff's Title IX complaint against Jane Roe in which he accused her of sexual assault because of his inability to consent due to his intoxication without a hearing. Whereas defendant substantiated Jane Roe's Title IX complaint against plaintiff and a hearing panel selected by

defendant will determine the merits of her complaint. Plaintiff now has no right to a hearing on his complaint against Jane Roe. This disparate application of defendant's policies demonstrates that defendant RPI discriminated against plaintiff because he is male. Such allegations meet the standard that plaintiff will have a reasonable probability of success sufficient to enjoin defendant RPI from taking action in violation of Title IX.

**B.      Plaintiff will be irreparably harmed prior to a resolution on the merits without an injunction ordered by the Court.**

As discussed above, plaintiff is scheduled to appear at defendant's Title IX hearing on **September 30, 2020 at four o'clock in the afternoon**.   Plaintiff's faces imminent harm as defendant has already stated that it will not provide him the process that he is due under the Title IX Rules.  (See Nociolo Affirmation ¶¶ 73-79).  The harm plaintiff will suffer from defendant's actions by conducting an unlawful Title IX hearing without the required procedural protections is real, immediate, or irreparable.   Once found in violation of defendant's policy a notation will be placed on his transcript that he suspended or dismissed due to a violation of RPI's 2018 Title IX Policy.  This scarlet letter will indicate to any future school or employer that he had committed sexual assault.  Justice and fairness would be undermined if plaintiff had to live with this finding without being granted to procedural protections that he is due under Title IX and its corresponding Title IX Rules, namely, the ability for his advisor to cross examine the complainant.

Defendant RPI is highly respected in the "STEM" fields, and the notation on plaintiff's transcript about sexual assault amounts to a scarlet letter to any graduate program or employer to which plaintiff may apply.  None of these issues could be cured by monetary damages alone.

Moreover, even if plaintiff was inclined to transfer out of RPI, he would have difficulty in doing so because his mechanical engineering is not widely available at many other schools

and few, if any, institutions carry the prestige of RPI in this field. Indeed, global engineering and technology firms regularly recruit RPI graduates from plaintiff's major program.

Assuming *arguendo*, that such companies are not discouraged by the notation on his transcript, plaintiff would also lose such opportunities by transferring away.  Doing so is made more impractical still because his courses are so specialized that few other schools would award him transfer credit for the coursework he has already completed.

**C.      Balance of the Hardships Tips in the Plaintiff's Favor**

When the potential harm that injunctive relief during adjudication of the present case could cause to defendants is weighed against the harm that denial of the present request would cause to plaintiff, the balance weighs overwhelmingly in plaintiff's favor.

Plaintiff's Title IX matter has been pending at RPI since January 2020.  Defendant has previously granted a several month request by plaintiff to adjourn the investigation of the Title IX complaint against him because he had taken a medical leave from school. Simply put, there is no urgency to conduct the Title IX hearing against plaintiff on Wednesday, September 30th.

By contrast, as outlined above, plaintiff would suffer substantial harm if defendant was allowed to proceed with an unlawful Title IX hearing against plaintiff without the requisite procedural protections mandated by Title IX and the corresponding Title IX Rules.

**D.      The Public Interest Would Not be Disserved by the Issuance of an Injunction**

If it is in the public interest to ensure that everyone – including male students accused of sexual assault – is given equal and full process as set forth by Title IX and its corresponding Title IX Rules before suffering consequences for their alleged actions, then certainly injunctive relief in the present case accomplishes that goal.

With all four prongs of the above-outlined test satisfied, this Court should grant the attached order temporarily restraining and preliminary enjoin defendants from conducting an unlawful Title IX hearing and enforcing the sanctions against plaintiff for his alleged violations of defendant RPI's 2018 Title IX Policy. Doing so would maintain the parties' status quo as closely as practicable to the manner in which they existed before the incident giving rise to the present case.

E. STEWART JONES HACKER MURPHY LLP

Julie A. Nociolo, Esq.
Bar. Roll No. 519914